CORLISS KELLER *et al.*, Plaintiffs-Appellants, *v.* BOARD OF EDUCATION OF JONESBORO SCHOOL DISTRICT 43, Defendant-Appellee.

Fifth District   No. 78-152

Opinion filed December 29, 1978.

G. MORAN, P. J., dissenting.

Hogan and Jochums, of Murphysboro, for appellants.

Feirich, Schoen, Mager, Green and Associates, of Carbondale, for appellee.

Mr. JUSTICE EBERSPACHER delivered the opinion of the court:

Plaintiffs Corliss and Gladys Keller filed a two-count complaint in the circuit court of Union County against defendant Board of Education. The Board moved to dismiss the complaint for failure to state a cause of action, which was granted by the trial court. Plaintiffs elected to stand on their pleadings and, accordingly, the action was dismissed with prejudice. Plaintiffs appeal.

As stated in the complaint, plaintiffs are the owners of a residence located on Cook Street in Jonesboro. The Board's grade school athletic field and baseball diamond is located directly across Cook Street opposite plaintiffs' premises. This action was brought for property damage to plaintiffs' garden plants and shrubs allegedly resulting from straying baseballs which crossed over Cook Street landing on the premises and from the acts of those seeking to retrieve such baseballs. Count I of the complaint is based on negligence and it alleges various omissions by the Board, each falling into one of two categories: the failure to maintain the baseball field in a proper condition so as to prevent baseballs from straying onto plaintiffs' property, and the failure to supervise students and "private persons" using the baseball field. Count II of the complaint is based on an alleged deprivation of civil rights under 42 U.S.C. §1983 (1976) and it alleges similar negligent acts or omissions by the Board, which it charges, resulted in "unauthorized under the color of law invasions of baseballs originating from Jonesboro Grade School * * * [in violation of] a fundamental right secured to Plaintiffs by the 5th and 14th Amendments of the United States Constitution."

In dismissing count I, the lower court ruled that absent an allegation that the claimed negligence was wilful and wanton, the Board was immune from liability under sections 3—106 and 3—108 of the Local Governmental and Governmental Employees Tort Immunity Act (Ill. Rev. Stat. 1977, ch. 85, pars. 3—106, 3—108). As to count II, the court ruled that an action for monetary damages could not be brought against a school board under 42 U.S.C. §1983 (1976).

The plaintiffs' brief on appeal is cryptic. Their first contention is as follows:

"Count I states a cause of action because chapter 85 I.R.S. immunizations of public entities, public employers and public employees from liability for ordinary negligence do not divest constitutionally secured persons of rights, the exercise of which rights in no way diminish or impede the general public's benefit from the public entity, employer or employee functions."

The crux of their argument appears to be as follows:

"The very recently reported case of Gerrity v. Beatty (1978) 71 Ill. 2d 47, 52-53, 373 N.E.2d 1323, makes it clear that in regard to

ministerial acts or omissions not functionally relevant to the intrinsic purposes of the School Code, the Illinois Supreme Court does not feel that imposing upon the District a duty of ordinary care is unduly burdensome or inconsistent with the intended purposes of the School Code."

The proposition thus asserted appears to be that under *Gerrity* a school board is no longer entitled to any immunity afforded by sections 3—106 and 3—108 of the Local Governmental and Governmental Employees Tort Immunity Act where the school board's acts are not "functionally relevant to the intrinsic purposes of the School Code [Ill. Rev. Stat. 1977, ch. 122, par. 1—1 *et seq.*]." *Gerrity* does not so hold.

In *Gerrity*, the plaintiff, a high school student, suffered severe injuries during a school football game due to a defective helmet furnished him by the defendant school district. The action was based upon ordinary negligence, rather than wilful and wanton conduct. At issue was whether section 34—84a of the School Code (Ill. Rev. Stat. 1973, ch. 122, par. 34—84a), conferring *in loco parentis* status upon teachers in direct, teacher-student relationships involving the exercise of the teacher's personal supervision and control over the conduct or physical movement of the student, barred liability of the school district for ordinary negligence. In holding against the school district, our supreme court held that the district's function of furnishing proper and safe equipment did not fall within the scope of the limited immunity provided by section 34—84a.

We find that *Gerrity* is inapplicable to the case before us. In *Gerrity*, immunity under sections 3—106 and 3—108 of the Tort Immunity Act was neither raised nor considered. Furthermore, in the instant case, unlike *Gerrity*, the negligence of the Board alleged to have caused harm involves either the existence of a condition of the ball park or a failure to supervise those playing baseball thereon, both of which fall within the scope of sections 3—106 and 3—108.

Section 3—106 of the Act at issue provides:

"Neither a local public entity nor a public employee is liable for an injury where the liability is based on the existence of a condition of any public property intended or permitted to be used as a park, playground or open area for recreational purposes unless such local entity or public employee is guilty of willful and wanton negligence proximately causing such injury." (Ill. Rev. Stat. 1977, ch. 85, par. 3—106.)

Section 3—108(a) provides in part:

"Except as otherwise provided by this Act * * * neither a local public entity nor a public employee is liable for an injury caused by a failure to supervise an activity on or the use of any public property." (Ill. Rev. Stat. 1977, ch. 85, par. 3—108(a).)

While plaintiffs appear to argue that liability for ordinary negligence in situations covered by these provisions would not in fact be unduly burdensome on a school board, this question of policy has already been settled against plaintiffs by the legislature when it enacted these provisions granting immunity. In no other manner than that discussed above, do plaintiffs challenge the lower court's application of sections 3—106 and 3—108 to count I of the instant complaint. On the narrow contention presented, we find no error in the trial court's dismissal of count I.

Turning to count II of the complaint, the lower court, in ruling that the Board was immune from suit under 42 U.S.C. §1983 (1976), relied upon *Monroe v. Pape* (1961), 365 U.S. 167, 5 L. Ed. 2d 492, 81 S. Ct. 473. However, during the pendency of this appeal the United States Supreme Court explicitly overruled that portion of *Monroe* cited by the lower court. In *Monell v. Department of Social Services* (1978), 436 U.S. 658, 56 L. Ed. 2d 611, 98 S. Ct. 2018, the court held that a local governing body, such as defendant herein, may be sued directly under section 1983 for monetary damages or other relief where the action alleged to be unconstitutional implements or executes a policy, custom, ordinance, regulation or decision promulgated by that body. (436 U.S. 658, 690, 56 L. Ed. 2d 611, 635, 98 S. Ct. 2018, 2036.) In the case before us, the parties dispute whether the deprivation alleged was a result of a "policy" of the Board.

■■■ Count II of the complaint is grounded on an alleged deprivation of plaintiffs' "right to use and enjoy their property in privacy free from garden and other damage." Under appropriate circumstances, State action causing a deprivation of the right to property is subject to redress under section 1983. In the instant case, however, plaintiffs only alleged mere negligence on the part of the Board. Specifically it is alleged that the Board: "carelessly constructed or maintained" an insufficient backstop; "carelessly failed" to supervise and police those using the ballpark; "carelessly omitted to fence the left field foul line to contain foul balls"; and "carelessly" encouraged, by written guidelines or otherwise, those using the ballpark "to retrieve balls that left the ball diamond area and landed in private property." The tort thus alleged amounts to the negligent failure of the Board to prevent the conduct of others on its property from damaging plaintiffs' adjoining property. Were it not for the Board's state statutory immunity, as previously discussed, it may have been liable for this tort under common law. (*Scharfenstein v. Forest City Knitting Co.* (1929), 253 Ill. App. 190; Prosser, Torts §57, at 356 (4th ed. 1971).) But conduct that may be actionable under common law does not necessarily rise to a constitutional dimension merely because of the involvement of a public body. (*Howell v. Cataldi* (3d Cir. 1973), 464 F.2d

272.) The majority of Federal courts have refused to extend the scope of section 1983 to encompass all torts committed under color of law and, to that end, have required a degree of culpability by a defendant greater than "mere negligence" to be actionable under section 1983. (*Howell v. Cataldi; Bonner v. Coughlin* (7th Cir. 1976), 545 F.2d 565 (and cases cited therein).) As stated in *Bonner*:

"Neither the language of the statute nor its history shows that Congress was providing a federal remedy for damages caused by the simple negligence of a state employee." (545 F.2d 565, 568.)

Hence, the accepted view is that negligent conduct of a State agency, although resulting in damage to a person's property, does not amount to a *deprivation* of that person's constitutional right to property.

■■ The pleadings in the instant case do not charge the Board of having an affirmative policy or custom requiring that baseballs be hit onto plaintiffs' property, but rather it is charged that the Board was careless in failing to prevent the "invasions of baseballs." Even were we to assume, *arguendo*, that the conduct of the Board was sufficient to predicate possible responsibility under *Monell* for the acts of the baseball players, the culpability of the Board, nonetheless, was not of a sufficient magnitude to constitute a deprivation of rights under section 1983. Accordingly we find the dismissal of count II to have been proper.

For the foregoing reasons, the judgment entered by the circuit court of Union County is affirmed.

Affirmed.

KARNS, J., concurs.

Mr. PRESIDING JUSTICE GEORGE J. MORAN, dissenting:

The majority misconstrues sections 3—106 and 3—108 of the Tort Immunity Act. These sections of the Act apply to persons who claim injury by reason of being injured while on public property. In this case the plaintiffs are not claiming that they were injured while on public property, but rather that an improperly supervised activity on public property has caused damage to them in their right to the peace and enjoyment of their own property. In addition, plaintiffs have alleged that the "[d]efendant granted the use of the said athletic field to private persons carelessly failing to police the use to keep it under those provisions and that control which the Board had seen fit to impose in order that Plaintiffs and other neighbors might use and enjoy their land free from straying ball damage."

Surely defendant has no immunity when it permits private parties to

12

conduct dangerous activities on public property which cause damage to those who own or occupy adjacent property.

Then too, the type of activity complained of here is not covered by the Tort Immunity Act. Plaintiffs are really alleging that defendant is conducting a public nuisance on its property to the damage of the plaintiffs.